Marshall B. Hughson et al. v. The People of the State of Illinois.

1. CONTEMPT—*Where the Disobedience of a Decree is Not Willful.*— Where the disobedience of a decree is not willful and does not clearly appear to have arisen from an intent to set at naught or bid defiance thereto, the power to punish for contempt can not be properly exercised.

2. SAME—*When the Power to Commit Should Not be Resorted To.*— The power to commit a party for a failure to comply with a decree when there is no other ground for regarding him in contempt than an unintentional disobedience of the decree, should not be resorted to.

3. SAME—*When an Officer of a Corporation is Not Liable.*—An officer of a corporation is not liable for contempt, solely because of his refusal to act without authority from the corporate body, upon an order of court directed against the corporation alone.

Proceedings for Contempt.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed. Opinion filed October 10, 1900.

MARTIN & LAMBERT, attorneys for appellants.

No appearance by appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from an order of the Superior Court adjudging the appellants, N. B. Hughson and C. J. Dunlap, guilty of contempt and fining each of them the sum of $50.

It appears that in January, 1899, one John Clay, Jr., filed his bill asking for an accounting and an injunction against the Stockholders' Building Loan and Savings Union, of which M. B. Hughson was president, and C. J. Dunlap, secretary.

In March following, a decree was entered requiring the Stockholders' Building Loan and Savings Union, upon the presentation of a certified copy of the decree, to transfer on the books of said company the title to ten shares of its capital stock, represented by the certificate standing at that time in the name of a third person, and to issue forthwith

to said John Clay, Jr., a certificate in due form for said ten shares of stock.

It appears from the affidavits filed, that on the 14th of March, 1899, the day upon which the decree was entered, at two P. M. of said day, a certified copy of the decree of the court was presented to and a demand made upon President Hughson and Secretary Dunlap, who were then attending a stockholders' meeting, requiring them to make the transfer of the stock and issue a new certificate then and there. The affidavits show that at the time the decree of the court was presented and the demand made, the stockholders of the corporation were already assembled in special meeting, in accordance with notice given, as provided by the statute, for the purpose of voting upon the question of reorganization or voluntary liquidation. The meeting had been called to order, had elected its chairman and secretary and had taken possession of the books of the corporation. A resolution had been offered providing for voluntary liquidation and the appointment of three persons as liquidators, to be vested with all the powers and authority exercised by the directors of said association, under its charter. It was at this time that the certified copy of said decree was shown to appellants. Appellants state that they believed they had no authority, as officers of the association, and no longer any right to act as president and secretary after the said meeting of the stockholders had organized, and such resolution was under consideration.

The decree for alleged disobedience of which appellants have been adjudged guilty of contempt, was not a decree against them personally, but against the corporation. It does not appear that any application whatever was made to the board of directors of said corporation to obtain the transfer of the stock and the issue of the new certificate, as the decree provided. There is an order contained in the abstract which indicates that the liquidators of said corporation did subsequently issue a certificate for said ten shares of stock to said Clay, but at the time of the contempt proceeding now before us, no application appears to have

been made and no opportunity afforded the corporation, acting through its board of directors, to direct compliance with the decree of the court referred to. The demand was made upon the president and secretary alone. The parties who instigated the contempt proceeding and procured the judgment now complained of, have not seen fit to appear in this court. We have, therefore, only the *ex parte* presentation of the case by appellants' counsel, but from the record before us, we are compelled to regard the order adjudging appellants guilty of contempt, as improperly entered. The officers of the corporation were not parties to the litigation. The proceeding bears marks of undue haste for which the record fails to show apparent justification. We find no reason to conclude that appellants were seeking willfully to evade or violate the decree. Their refusal to immediately make the transfer might well arise from an honest doubt as to their duty in the premises, without the opportunity to receive instructions from the corporation; and where disobedience of a decree is not willful, and does not clearly appear to have arisen from intent to set at naught or bid defiance thereto, the power to punish for contempt can not be properly exercised. In Goodwillie et al. v. Millimann, 56 Ill. 525, it is said, the power to commit a party for failure to comply with any decree, when there is no other ground for regarding him as in contempt, " should not be resorted to, unless there are no other reasonable means for its enforcement." There is apparently no reason to suppose that either the corporation or appellants had any intention of refusing to comply with the decree. They were not, we think, given reasonable opportunity for compliance. Dinet v. The People, 73 Ill. 183.

It may well be doubted whether an officer of a private corporation is liable to punishment for contempt of court solely because of his refusal to act without authority from the corporate body upon an order which is directed against the corporation alone. The mere fact that a man holds an office in a corporation can not, we think, be deemed sufficient ground to punish him for contempt of court, because

of the failure or refusal of the corporation to comply with the decree. In the case of Rex v. Windham, reported in the 1st Cowper's Reports of cases adjudged in the Court of King's Bench, page 377, Lord Mansfield said:

" In the Court of Chancery, when a bill is brought against a corporation, if the corporation is in contempt, there is no remedy by way of proceeding for a contempt personally against the real parties who offend."

It was held that a mandamus would have to issue in order to compel the warden of the corporation (Wadham College) to affix the corporate seal to an answer, without which the Court of Chancery could not proceed. In the case of McKim v. Odim, 3 Bland's Chancery (Maryland), Rep., commencing on page 415, will be found an interesting discussion of the same general subject by the chancellor. There is a dictum by Mr. Justice Lawrence, in In re Western Mar. and Fire Ins. Co., 38 Ill. 289, where it is said, that when a court has made an order appointing a corporation a depository of court funds, the court may order it to refund the money; and if the officers, having control of these funds, and having the means for payment, belonging to the corporation, in their hands, should refuse to pay, without showing some valid reason, " they too might be proceeded against, as for contempt." The reason is said to be that the debtor sustains such a personal relation to the court, as its quasi officer, that he is subject to its summary orders. In Southern Development Company v. Houston & T. C. Ry. Co., 27 Fed. Rep. 345, the doctrine thus stated is, however, apparently questioned, and it is said that if it be conceded that a bank under such circumstances becomes an officer of court, " there is neither reason nor authority for considering that each servant or agent of the bank also became *pro hac vice* an officer of the court and therefore amenable to the court, as in the case of contempt for misconduct in dealing with the bank funds."

We regard the order punishing the defendants for contempt as erroneous. It is therefore reversed.