**Michael Flannery v. The People of the State of Illinois.**

**Jerome Collins v. The People of the State of Illinois.**

**John M. Shea v. The People of the State of Illinois.**

**Charles F. Woerner v. The People of the State of Illinois.**

**Harry Brown v. The People of the State of Illinois.**

**Gen. Nos. 12,883, 12,884, 12,885, 12,886 and 12,887. Consolidated for Hearing.**

1. CONTEMPT—*chancery has jurisdiction to punish for acts done pursuant to a conspiracy.* While a court of chancery may be without jurisdiction to punish for the crime of conspiracy, it has the power to punish for acts done pursuant to a conspiracy in violation of its writ of injunction.

2. CONTEMPT—*when respondent not entitled to be discharged upon his answer.* Where the proceedings are of a civil nature, the respondent is not entitled to be discharged upon his answer.

3. CONTEMPT—*what not essential to punishment for.* It is not necessary, in order to charge one with violation of a writ of injunction, that he should be named in the injunction order or writ or that he should be a party to the suit, so long as it appears he had notice of the injunction.

4. CONTEMPT—*when punishment for, not erroneous because of insufficient verification of petition.* An insufficiently verified petition does not affect the validity of an order punishing for contempt, where there are numerous affidavits filed in support of the rule to show cause.

5. CONTEMPT—*when court justified in hearing evidence given upon prior proceedings for contempt.* Where there was a single conspiracy which was *prima facie* established, the court is justified in hearing the evidence given upon former hearings for contempt where such evidence showed the conduct of the respondents and their co-conspirators in connection with and in furtherance of such conspiracy.

BROWN, J., dissenting in part.

Contempt proceedings. Writs of error to the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

**Statement by the Court.** The above entitled causes were consolidated for hearing in this court and were heard on the same abstracts and briefs. The writ of error in

each case was sued out to reverse a decree against the plaintiff, for contempt in violating an injunction.

The bill on which the injunction issued was filed October 9, 1903, in the Superior Court by the Chicago Typothetae, a voluntary association, organized for the purpose of advancing and improving the binding and printing business, engaged in by its members, in the city of Chicago, and for the purpose of employing skilled mechanics, whose services might be required by its various members, for and on behalf of R. R. Donnelley & Sons Co., W. F. Hall Printing Co., Marsh & Grant Co., Faithorn Printing Co., Rogers & Co., S. D. Childs & Co., Jefferson Theatre Program Co., Shea, Smith & Co., and A. R. Barnes & Co., members of said association. October 18, 1903, after an injunction had issued, as prayed by the bill, but without prejudice to the injunction, an amendment and supplemental bill was filed in which all of the members of the association named in the original bill, and the C. H. Morgan Co., a member of the association, were named as complainants. Franklin Union No. 4, a corporation, Charles F. Woerner, plaintiff in error, president of said union, J. M. Shea, plaintiff in error, secretary and treasurer of said union, and a number of other persons, were made defendants. An injunction was issued, as prayed by the bill, October 10, 1903. The substance of the bill and of the injunction issued is stated in Franklin Union v. The People, 220 Ill. 355, 360–362, Mr. Justice Hand delivering the opinion, and need not be here restated. When the bill in the case cited was filed, Franklin Union No. 4 was incorporated, but when that union was fined $1,000 by the Superior Court for violation of the injunction, the corporation, December 12, 1903, held a meeting, at which it was agreed by the members that the corporation should be dissolved, and a certificate of dissolution was, at that date, signed by the directors, but was not filed for record in the office of the Secretary of State till December 23, 1903, the day that notice was given that a petition for an attachment for violating the injunction against plaintiffs in error would be presented to the court. The members of

Franklin Union No. 4 organized a voluntary association, of the same name as the dissolved corporation, and elected the old officers of the corporation to fill the same offices which they formerly held, and proceeded substantially in all respects as if the corporation had not been dissolved. Franklin Union No. 4, Charles F. Woerner and J. M. Shea, plaintiffs in error, answered the bill jointly, denying its material allegations.

About October 5, 1903, Franklin Union No. 4, then a corporation, and its members, called a strike, the cause of which we cannot better state than in the following language of the court in Franklin Union No. 4 v. The People, 220 Ill., p. 362:

"The immediate cause of the strike inaugurated by Franklin Union No. 4, and its officers and members, was, that a contract had been entered into between the Chicago Typothetae, on behalf of its members, and the members of Franklin Union No. 4, regulating the hours, wages and terms of employment between the different members of the Chicago Typothetae and the members of said union. That contract Franklin Union No. 4, by resolution, on September 27, 1903, annulled. The Chicago Typothetae and its members thereupon refused to further recognize Franklin Union No. 4 or deal with its members as members of said union. Thereafter, and upon the 5th day of October, 1903, a strike was inaugurated by Franklin Union No. 4 against the members of the Chicago Typothetae."

December 23, 1903, the Chicago Typothetae, and its members, the companies for and in whose behalf the bill was filed, presented to the court a petition averring, in substance, the filing of the bill, the injunction issued October 10, 1903, as prayed by the bill, and that due notice had been given to plaintiffs in error of the injunction, and charging that, since the same was granted, plaintiffs in error and divers persons associated with them, whose names are unknown to petitioners, have daily interfered with the business and property of petitioners, their agents and servants, in the operation of their factories, offices and

Flannery v. The People.

places of business; and have compelled, and, by unlawful persuasion attempted to compel, divers of their employees to fail and refuse to work and discharge their duties, and, by like unlawful persuasion, have attempted to prevent and have prevented divers persons from continuing in or entering into the employment of petitioners, respectively; and have combined and conspired with evil disposed persons, whose names are unknown to petitioners, to obstruct each of the members of the Chicago Typothetae and their officers and employees in their business and in the control and direction thereof; and have interfered and molested divers persons who were seeking employment with petitioners, and thereby wrongfully prevented divers persons from obtaining employment with petitioners; and have procured divers persons, in large numbers, to collect in the approaches to the factories and places of business of petitioners, for the purpose of guarding the streets, alleys and approaches thereto, and to unlawfully persuade the employees of petitioners, respectively, to leave their employment, and to intimidate others seeking to enter their employ from so doing; and that Franklin Union No. 4, by its officers, Charles F. Woerner and J. M. Shea, have inaugurated visiting and strike committees, whose duty, as such committees, is to visit the homes of petitioners' employees, for the purpose and with the intent of unlawfully persuading said employees to leave petitioners' service, and for the purpose of persuading the wives and families of said employees to cause said employees to abandon their employment with petitioners. Said visiting and strike committees consist of members of said union, and are acting under said Woerner and Shea, and are aided and abetted by divers evil disposed persons in preventing petitioners from obtaining the help necessary to carry on their respective businesses, and petitioners charge that Jerome Collins, H. Brown, Flannery (and others mentioned) are members of said visiting and strike committees, and are constantly visiting the homes of petitioners' employees, as herein alleged and as is shown in the affidavits of Harry Howard and numerous others (naming them), herein filed.

The petition further avers that Franklin Union No. 4 and plaintiffs in error have offered money to petitioners' employees to induce them to quit petitioners' employ, and to those seeking employment with petitioners to dissuade them therefrom, and, in many instances, with success; that the money so used was paid from the funds of Franklin Union No. 4 by and through its officers, and that a fund for the purposes aforesaid is collected, maintained and disbursed by said union. Prayer for a rule to show cause. The petition charges fully violations of the injunction, which is very comprehensive. Each of the plaintiffs in error answered the petition. The petition is verified by the affidavit of Daniel C. Shelley, secretary of the Chicago Typothetae. Rules to show cause were entered against certain of the persons named in the petition December 23 and 30, 1903, and January 9 and 12, 1904. The order of January 12, 1904, after reciting that a rule had been entered against plaintiffs in error and others named to show cause why they should not be punished for contempt, for the violation of the injunction, and that plaintiffs in error, Charles F. Woerner, J. M. Shea, Jerome Collins and Michael H. Flannery and others were present in court and represented by counsel, extended the rule to show cause till January 15, 1904. By subsequent orders the rule was extended till eleven o'clock February 8, 1904. The cause was heard on numerous affidavits and on documents produced and oral testimony, in open court, and the court found each of the plaintiffs in error guilty and fixed the punishment of each of them as follows: Charles F. Woerner, three months in jail and fine $250; John M. Shea, six months in jail and fine $100; Jerome Collins, two months in jail; Harry Brown, thirty days in jail.

J. A. Bloomingston, for appellants.

Tenney, Coffeen, Harding & Wilkerson and Allen & Weseman, for appellees; Horace Kent Tenney and James H. Wilkerson, of counsel.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Plaintiffs in error will be referred to merely as plaintiffs and defendants in error merely as defendants, in this opinion. Before considering the main contention of counsel for plaintiffs, which is that the decree is not warranted by the evidence, we will consider the following objections urged by counsel:

1. The injunction is void, for the reason that the bill states no jurisdictional facts. Counsel argues, in support of this objection, that under the bill the members of the Chicago Typothetae, for and on whose behalf and by whose request the bill was filed, can have no relief under it. This objection is fully considered and answered in Franklin Union v. The People, 220 Ill. 355, 364–370, in which case the amended and supplemental bill in this cause was before the court. The court, in the case cited, conclude its consideration of the objection by saying: "We think it is clear, from any view that can be taken of this case, the court had jurisdiction of the parties and of the subject-matter of the suit, and that its order of October 10th, granting the injunction, was not void, but was a valid and binding order until modified, set aside or reversed, and the respondents cannot escape punishment for a violation of the injunction issued in pursuance of that order, on the ground that the court was without jurisdiction to enter it, or exceeded its jurisdiction in entering it."

2. A conspiracy to injure the business of another is a crime, and the court has no jurisdiction to punish for a crime. It is sufficient to say of this objection, that the punishments of the plaintiffs were not inflicted for the crime of conspiracy, but for acts done in pursuance of a conspiracy. The averment and proof of conspiracy, in a civil case, is merely for the purpose of connecting the persons conspiring with the acts and declarations done and made in pursuance of the conspiracy, the rule being that each conspirator is liable for the acts and declarations of his co-conspirators done or made in furtherance of the ob-

jects of the conspiracy. Franklin Union v. The People, 220 Ill., p. 377. The proceedings for contempt are of a civil nature, and a defendant is not entitled to be discharged on his answer. O'Brien v. The People, 216 Ill. 354, 368.

3. The court erred in finding plaintiffs Flannery, Brown and Collins guilty, for the reason that they are not enjoined in terms. Each of them is a member of Franklin Union No. 4. It is not necessary, in order to charge one with violation of an injunction, that he should be named in the injunction order or writ, or that he should be a party to the suit, so long as it appears that he had notice of the injunction. Christensen v. The People, 114 Ill. App. 40, 59; O'Brien v. The People, 216 Ill. 354, 366.

4. The petition is void for want of verification. The specific objection is that the affidavit verifying the petition is on belief. There were numerous affidavits filed in support of a rule to show cause, and a petition was not necessary. Franklin Union No. 4 v. The People, *supra*, p. 382.

5. Substantial injury must be shown to warrant punishment. The facts averred in the bill and, as we think, proven, show substantial injury to the business of the members of the Chicago Typothetae. See Franklin Union No. 4 v. The People, *supra*, p. 382.

6. The court erred in admitting affidavits relating to matters which occurred prior to the issuance of the injunction, and in admitting in evidence the testimony of Shea in previous contempt proceedings for violation of the injunction, and in admitting in evidence the minutes of a meeting of Franklin Union No. 4 held September 27, 1903. A conspiracy is averred in the bill; the affidavits tend to prove the averment, and it is immaterial when the conspiracy was formed, if plaintiffs were parties to it. A like objection was made in Christensen v. The People, 114 Ill. App. 40, affirmed in O'Brien et al. v. The People, *supra*, in respect to which it is said: "The conspiracy originated simultaneously with the calling of the strike, and continued till the filing of the last petition, July 14, 1903. It was a single conspiracy, and the court, on the hearing of

each of the second and third petitions, did not err in hearing the prior evidence. The evidence was competent, as tracing and showing the character of the conspiracy", citing State v. McCahill, 72 Ia. 111, 115.

The plaintiff Shea, when called as a witness, refused to answer certain competent and relevant questions, on the express ground that his answers might tend to criminate him. It is objected that the court then compelled the witness to answer questions, put for the purpose of laying a foundation for the introduction of his testimony in former contempt proceedings in the same case. There was no error in the ruling. The former testimony of the witness was admissible as an admission. That there was no sufficient ground for his refusal to answer will be shown hereafter in this opinion.

The minutes of the meeting of September 27, 1903, were competent and were properly admitted in evidence. These minutes were before the court in Franklin Union v. The People, *supra*, and were commented on, and were evidently considered relevant and important by the court, as the initial step in the strike and leading to all the consequences which followed it.

We will next consider the chief contention of plaintiffs' counsel, namely, that there is no evidence to support the decrees inflicting punishment on the plaintiffs. The minutes of the meeting of September 27, 1903, show that Franklin Union, by the votes of its members, unanimously adopted a resolution by which, after reciting that a certain agreement made on or about January 2, 1902, existed between the union and the Chicago Typothetae, the agreement was declared null and void, and it was resolved that, in the event of the demand for higher wages terminating in a strike, no benefits should be paid for the first week of the strike; that the strike benefits should be limited to $5 per week for single men and $7 per week for married men; that $2 per week, during the time of the strike, should be levied on all members employed, the men on strike to be excused while they would be on strike, but the assessment

to be enforced against them as soon as they should secure work; "that suitable headquarters be engaged on the south and west sides, for the purpose of transacting the business of the union in regard to the strike," and that two committees of three members each be appointed to act in the capacity of a visiting committee, for the purpose of visiting the various employees, the members of which were to receive $2.50 per day for each day lost. The resolution is set out *verbatim* in Franklin Union v. The People, *supra*. At the same meeting the president, Charles F. Woerner, appointed a visiting committee consisting of plaintiffs Flannery and Brown, and Mills, Gorf, Conley and Mansfield; a conference committee consisting of plaintiffs Woerner, Brown, Flannery and Shea, and others named, respectively, Miner, J. H. Miller, Hock, Pettis, Conley, Mansfield, Mills, Charters and Wiegand; also a strike committee consisting of plaintiffs Flannery, Shea, Woerner and Brown, and others named, respectively, Mills, Dougherty, Littrell, Wolfe, Miner, Hock, Conley, Mansfield, Gorf, F. McCabe and Boettger. Within a few days after the meeting the union established its headquarters at 14 Customhouse Place, in the city of Chicago, and then proceeded as provided by clause 8 of the resolution of September 27, 1903, to transact "the business of the union in regard to the strike." The evidence in the cause is very voluminous, and it is impracticable to refer to it in detail without making this opinion an abstract of it. We have read and reread it with great care, both on account of the importance of the questions involved to the plaintiffs, and because of the persistent contention of their counsel that the evidence does not sustain the findings of the court.

The first question presented on the merits is, was there a conspiracy as charged in the original and supplemental bill and found by the court. The evidence clearly shows that there was a conspiracy between members of the union and the object of it. It appears from clause 5 of the resolution of September 27, 1903, that the union and the members thereof contemplated a strike, in the event that the mem-

bers of the Chicago Typothetae would not accede to their demand for higher wages. By the resolution a strike benefit of $5 per week for single men and $7 per week for married men, who should quit their employment, was provided for, and an assessment was authorized of $2 per week on all employed members. There were about 1,800 members in the union, and only about 150 or 200 quit their employment. Assuming the number of those quitting their employment with the members of the Typothetae to have been 200, an assessment of $2 per week on each of the remaining 1,600 was greatly in excess of the amount required to pay the benefits provided for by the resolutions, indicating that the union and its members did not contemplate a peaceful and lawful strike, such as that mentioned by the Supreme Court in Franklin Union v. The People, viz: the quitting the employment of the members of the Typothetae, either singly or in a body, but that they contemplated a forcible strike, and were preparing for war. The evidence shows that the action of the union and its members corresponded with the intention manifested by the resolution. They picketed the factories and places of business of the members of the Typothetae, thus intimidating their employees; visited the employees at their homes and elsewhere, and offered them money to quit their employment, and induced numbers of them so to do, and in some instances resorted to violence against employees who refused, at their dictation, to quit their employment; they hired persons to take employment with different members of the Typothetae, for the purpose of acting as spies, to learn the names and addresses of the employees of such members and report them to the committee or officers of the union, so that they might induce them by offers of money, or by intimidation, to quit their employment. In short, the union and its members instituted a complete system of action, for the purpose of so interfering with, obstructing and injuring the business of the members of the Typothetae as to compel them, if possible, to accede to their demands. The spies employed were girls, and what they

were employed to do, and the object of their employment,
were clearly stated by the plaintiff, Brown, to a person
who was at the union headquarters when some of the girls
came there.    One Bollinger, who was there, said to Brown,
"I suppose these are a couple of your girls," and Brown
said, "Yes, these are girls that we have got working in
shops among the non-union girls, to get their names and
addresses.    After they get the names and addresses of all
the girls in the shops, we call them off and send them
somewhere else, and, if we have no place to send them, we
pay them a benefit of $5 a week until we have a place for
them.    When we get the names and addresses of these
girls, we then get busy, and some day the shop will wake
up and they will have no person to do any work for them."
Brown was a member of the strike committee and also of
the visiting committee, mildly so-called by the union, and
doubtless knew what he was talking about.    His state-
ment shows at least one of the uses of the excessive assess-
ment.    That the union and its members resorted to threats
and violence, to attain the object which they had in view,
is shown by the evidence.    Franklin Union No. 4 was a
co-respondent with the plaintiffs to the petition for a rule
to show cause, and, by the decree finding plaintiffs guilty
and fixing their punishment, Franklin Union was also
found guilty and a fine of $1,000 imposed on it.    It was
also a respondent to a previous petition for an attachment
for violation of this same injunction and was found guilty
and a fine of a thousand dollars imposed on it, from which
it appealed to this court, and the branch Appellate Court
affirmed the decree against it, and it appealed to the
Supreme Court.    The facts in those appeals showing a
conspiracy are substantially the same as in this case.
Franklin Union No. 4 v. The People, 121 Ill. App. 647;
Same v. Same, 220 Ill. 355.    Counsel for plaintiffs does
not contend that a conspiracy did not exist.    He ignores
that fact and the question whether plaintiffs were par-
ties to the conspiracy, and argues that there were no
acts of any of the plaintiffs which would warrant a

decree against them. Counsel seems to have omitted consideration of the law, that "when a conspiracy is once entered into, each conspirator then becomes liable for all the acts of his co-conspirators done in furtherance of the objects of the conspiracy;" Franklin Union v. The People, 220 Ill. 377; and also that, if the acts of a conspirator, considered alone, are apparently innocent, this is immaterial, if the acts were in furtherance of the conspiracy, and with knowledge thereof. United States v. Cassidy, 67 Fed. R. 698, 702. In Swift & Co. v. United States, 196 U. S. 375, it is said: "It is suggested that the several acts charged are lawful, and that intent can make no difference. But they are bound together as parts of a single plan. The plan makes the parts unlawful." Ib. 396, citing Aikens v. Wisconsin, 195 U. S. 194, 206. If any one of the plaintiffs, knowing of the conspiracy, did anything in furtherance of it, he became a party to it, and all acts of his co-conspirators, in furtherance of the conspiracy, are chargeable against him. Woerner was the president of Franklin Union, and therefore, presumably, its managing officer. He presided at the meeting of September 27, 1903, which passed the resolution, which was the initial step in the strike, and appointed the strike and conference committees on each of which he was. He was present at the headquarters established "for the purpose of transacting the business of the union in regard to the strike," and was cognizant of money being paid to spies by Shea, the financial secretary and treasurer, and, himself, talked to a girl in the employ of the Jefferson Program Company, who was brought to headquarters by one Wolfe, a member of the strike committee, and advised her to quit her employers and that the union would pay her $5 per week, and was successful in getting her to leave her employers, and subsequently Shea paid her two weeks' wages at headquarters. Assuming the plaintiff Woerner to be a man of common sense, observation and ordinary intelligence, of which there is no evidence to the contrary, it seems impossible to conceive that he, the president and

managing officer of Franklin Union, did not know what was being done. In Franklin Union v. The People, 220 Ill. 355, 379, the court say: "It is clear that the violence, force, threats, intimidation and coercion which immediately followed the inauguration of the strike on October 5, in the vicinity of the headquarters of Franklin Union No. 4 and the business places of the members of the Chicago Typothetae, was the direct result of the action of Franklin Union No. 4 at the meeting of September 27, and of the action of the union and its officers thereafter, and the results which followed were those which Franklin Union No. 4 and its officers were bound, in law, to know would likely follow their action in inaugurating and carrying on what counsel characterize as an industrial war."

Shea was financial secretary and treasurer and also a member of the strike and conference committees. He had charge of the collection of the assessment levied on the members of the union to carry on the strike; he paid benefits not only to members who quit their employment, but to girls employed as spies, and acted in conjunction with other members of the strike committee. When on the witness stand he refused to answer certain competent and relevant questions, on the ground that his answers might criminate him. He was not privileged as he claimed. In Board of Trade v. Central Stock & Grain Exchange, 98 Ill. App. 212, 224, we said: "A number of witnesses, some of them officers of appellee, refused to answer questions relevant to the issues, on the like claim of privilege. When a party refuses to answer relevant questions, or to produce evidence in his possession, or subject to his control, the presumption is that the testimony, if given, or the evidence, if produced, would be unfavorable to him. 1 Jones on Evidence, section 17. Although such refusal, if based on the ground that the evidence might tend to criminate the party, could not be used against him in a criminal prosecution, we are inclined to the view that in a civil case the general rule, as above stated, is applicable." On appeal, the Supreme Court adopted the opinion of this court.

Stock Exchange v. Board of Trade, 196 Ill. 396, 407.  Although Shea, as financial secretary and treasurer, received and paid out large sums of money for strike benefits, and. to spies, etc., he testified that he made no entry in the books of the association, showing for what purpose or to whom any money was paid.  In view of this testimony we fully concur in the suggestion of counsel for defendant, that the plainest rules of self-interest would compel both the union and its disbursing officers to keep such a record, unless the record would connect it and them too closely with persons for whose acts they desired to avoid responsibility.

Harry Brown, plaintiff, was the secretary of Junior Franklin Union, which is a subordinate branch of Franklin Union, and was also a member of the strike committee, and had charge of the girl pickets and spies, who reported to him.  He was exceedingly active in promoting the system which was devised and organized for the purpose of obstructing and injuring the business of members of the Typothetae, to compel acquiescence in the demand of the union and its members.

Plaintiff Flannery was, apparently, an important man in the strike.  He was a member of each of the three committees appointed September 27, 1903, the strike, conference and visiting committees.  After a girl who had been in the employ of the Jefferson Program Company had been induced by Wolfe and Woerner, members of the strike committee, to quit her employment with the Jefferson Program Company, and after she had been put to spying at R. R. Donnelley & Sons Co's place of business, Flannery and Boettger, who was also on the strike committee, went to the girl's home to get her report, and they asked her whether she had found out any names. He was also present at headquarters when money was paid to the girl spies.

Jerome Collins was a member of Franklin Union, but not on any committee.  He called on one Fritz Schraub at his home, and asked him to leave the employ of S. D.

Childs & Co., for whom he was working, and said the
union would pay him $5 per week if he would do so.
Schraub quit, but when he applied for the promised
money it was refused, and he then returned to work
for the same company.  He was afterwards, October 13,
1903, assaulted by parties who, he says, he believes to
have been associates of Collins, and again, December
11, 1903, was assaulted by one who he knows was a
member of the union, but whose name is unknown to
him.  He called on Grace Thelemann, who was in the
employ of S. D. Childs & Co., November 5, 1903, and
told her that he came for the purpose of getting her to
leave her employers, and that if she would do so, the
union would give her $5 a week and get her another
position, and, on her saying that she was perfectly sat-
isfied with her work, he became angry and said that if
she would not quit they would get after her and she
would be killed; and, November 10, 1903, Collins again
called on her and tried to get her to leave her employers.
Emma Trounbly deposed that December 7, 1903, Collins
called on her and said he had come by the request of
Brown, an officer of the union, to see if she would not
leave her position with Childs & Co., and said if she would
do so, the union would pay her $5 per week and get
her another position; and again, December 18, 1903, he
called on her for the same purpose, and said that the
union intended to get the rest of the girls to quit their
employment, and that they would visit every one of the
employees who had taken the strikers' places, and get
them to leave December 24th, so that Childs & Co. and
the other employers would be bound to give in.  The evi-
dence also shows that Collins was present at the union
headquarters when girl spies received their money, and
that he there gave directions to at least one of them.

In view of the entire evidence we have no doubt that
the plaintiffs knew of the conspiracy, were parties to it,
and acted in furtherance of it.

Counsel contend that the order fixing the punishments

of Woerner and Shea is void for uncertainty. We think the parts of the decree fixing the punishment of Woerner and of Shea sufficiently certain.

Lastly, it is urged that the punishments decreed are excessive. We do not feel that the evidence would warrant us in sustaining this objection. In each and every of the cases above entitled the decree will be affirmed.

*Affirmed.*

ADAMS, P. J. These causes were considered and the conclusions announced in the foregoing opinion were reached before the recent change in the personnel of the court, and Judge Holdom, who heard the causes in the Superior Court, took no part whatever in their consideration here.

BROWN, J. I concur in the affirmance of the judgments, but I do not agree with all that is said in the preceding opinion nor in all the reasoning therein.

The injunction which was violated by the defendants was very comprehensive. It forbade any interference with or hindrance or obstruction to the business of complainants. The defendants knew the construction placed on it by the chancellor who granted it. They were under obligation to obey it if they could not secure its abrogation or modification. Apart from any connection on their part with an alleged conspiracy, I think the evidence shows that each one of the defendants did interfere with, hinder and obstruct the business of the complainants.

The questions of law raised by the defendants have been settled adversely to their contentions by the Supreme Court in Franklin Union v. The People, 220 Ill. 377.

The punishments are severe, but in such cases must be left largely to the discretion of the chancellor issuing the injunction. Therefore I think the judgments must be affirmed.