Mears Slayton Lumber Company, v. District Council of Chicago of the United Brotherhood of Carpenters and Joiners of America et al.

The People of the State of Illinois, Appellee, v. John J. Brittain et al., Appellants.

## Gen. No. 15,068.

1. INJUNCTIONS—*when should be obeyed.* If the court had jurisdiction to grant the injunction in question it should be obeyed while it remains in force.

2. INJUNCTIONS—*who bound to obey.* A person having knowledge of the existence of an injunction though not a party to the proceeding in which it was granted is bound to obey the same.

3. INJUNCTIONS—*propriety of in connection with strikes.* The right to strike is recognized by the courts but a conspiracy to ruin the business of an employer of labor by means of picketing, boycotting, etc., is unlawful and the injunctive process of the court may be employed to defeat such conspiracy.

4. CONTEMPT—*what not essential to proceeding for.* A petition is not essential to initiate contempt proceedings. If a rule to show cause is supported by affidavits the requirements of the law are observed.

5. CONTEMPT—*when technical objections come too late.* Technical objections first made on appeal come too late and are deemed to have been waived.

6. HABEAS CORPUS—*when order of discharge void.* An order of discharge entered in a *habeas corpus* proceeding by and through the misprision of the clerk is void and may be set aside after the lapse of the term of entry.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the October term 1908. Affirmed. Opinion filed June 16, 1910.

JOHN D. FARRELL and DANIEL L. CRUICE, for appellants.

MAYER, MEYER & AUSTRIAN and JAMES G. ELSDON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Appellants prosecute this appeal in an effort to reverse an order of the Circuit Court entered July 8, 1908, finding them guilty of violating an injunction in the chancery suit above entitled, restraining the calling of strikes against complainants, picketing their plants or the buildings in process of erection, for which they were furnishing materials in the shape of lumber and mill work, and from maintaining a boycott against them or their product, and punishing each of appellants by a jail sentence of thirty days. The order finds that appellants wilfully and knowingly violated and aided and abetted in violating the injunction, in that they did "interfere with, hinder and obstruct the business of said complain-

ant, and that said respondents did on said last mentioned date drive together in an automobile to each of a large number of buildings then being constructed by the persons and firms, or a large number of them, last above named, and did then and there order a strike on said buildings, because there was then and there being used upon said buildings lumber and material furnished by said complainant; that on each and every of said buildings there were then and there employed by the persons above named, who were constructing said buildings as aforesaid, carpenters, among whom were then and there members of said defendant's District Council of Chicago of the United Brotherhood of Carpenters & Joiners of America, and that upon such strike being ordered by the said respondents, Charles G. Grassell, George H. Lakey and John J. Brittain and all of the carpenters so employed on each of said buildings did then and there leave work upon said buildings aforesaid, and that thereupon all carpenter work on each of said buildings was stopped; and that the carpenters so called out on strike as aforesaid were ready and willing and desired to work, but obeyed said orders to strike by the wrongful acts of said respondents, as aforesaid. And that said contractors, as aforesaid, were then and there informed by said respondents that they, said contractors, could not use lumber or materials theretofore furnished or thereafter to be furnished and delivered by said complainant."

Without reviewing the evidence, which is somewhat lengthy, consisting of numerous affidavits, which we have read with much care, we are satisfied that they furnish abundant facts sustaining the findings of the chancellor as above set forth, and that such acts of appellants constituted and were a violation of the injunctional order.

The bill sets forth that complainant is engaged at Chicago in the business of manufacturing and selling lumber and general mill work, and has invested upwards of $200,000 in its plant and equipment, and that its annual volume of business exceeds one million dollars; that it has many contracts in hand for future delivery that it is able to fill if unmolested by the defendant Unions and their members; that

330     Appellate Courts of Illinois.

Mears Slayton Lumber Co. v. District Council, 156 Ill. App. 327.

many of such contracts are for lumber and mill work to be delivered to and used in the construction of a number of buildings in process of erection at Chicago; that but for the interference of the Union defendants and their members, complainant is able to procure workmen in all its branches to do its full complement of work, so that all its contracts can be filled at a wage and work hour satisfactory to complainant and its workmen; that these Unions in April, 1908, endeavored to force upon complainant an increase in the wages of its workmen and a shortening of their hours of labor; that on complainant's refusing to submit to these demands, a strike was called by the Unions and about seventy-five of complainant's workmen, members of the defendant Unions, quit its employment. The quitting of these men on the strike called by the defendant Unions resulted in a temporary suspension of complainant's business. Thereafter complainant succeeded in engaging a few non-union men, but owing to the defendant Unions and their members and accomplices having established a system of picketing, boycotting and unlawful interference with the workmen at its plant and the buildings where it was supplying material, it was not able to obtain men in sufficient numbers to operate its plant and carry out its contracts; that large numbers of men have refused to work for complainant because they fear the defendants and the picket line with sluggers which the defendant Unions and their members were maintaining at its plant and other places where it was engaged in fulfilling its contracts, and that many men employed since the strike was declared, have quit their work owing to like fears; that the defendant Unions and their members have conspired together to unlawfully stop the business of complainant unless it complies with the unlawful demand to operate what is known as a closed shop, composed solely of members of defendant Unions, and to accede to the demand made for an increased scale of wages and decreased hours of labor; that the boycott established seeks to induce and compel builders and contractors "to refuse to use lumber, mill work or other material furnished by any employer or manufacturer against whom said organiza-

tions, or either of them have a grievance, and by threatening any one who does use such material, lumber or mill work with a strike on such job or building where such mill work, lumber or material is used, and by preventing members of said defendant organizations from working on any other building or job."

The bill sets forth in detail acts which constitute a boycott and charges specifically that the defendants are maintaining a large force of pickets about complainant's milling plant, and that professional sluggers have been hired to intimidate its workmen and have succeeded in doing so; that the pickets follow the lumber of complainant to its destination and have called and will continue to call, unless restrained from so doing, strikes on the buildings where such lumber or material is used, if it is not rejected; that such boycotting and picketing, if continued, will result in the ruin of complainant's business. It is further charged that the defendant Unions are voluntary organizations of carpenters and joiners; that their members are constantly changing, and that all of them are financially irresponsible, and that complainant is without remedy unless protected in its rights by the restraining power of a court of equity. The Unions and their members, as far as known, and their officers, both officially and as individuals, are made parties defendant. An injunction in the terms of the prayer of the bill was granted, and all the appellants except Brittain were parties to the bill. The form of the bill is not, as we can see, open to serious objection. It is in all its material averments and prayer for relief substantially, both in principle and fact, in accord with the bills in Franklin Union No. 4 v. The People, 220 Ill. 355; Barnes v. Typographical Union No. 16, 232 *ib*, 424; and in its boycott aspect not unlike Piano & Organ Workers International Union of America v. The Piano, Organ & Supply Co., 124 Ill. App 353.

The court had jurisdiction to grant the injunction and it was therefore bound to be obeyed while it remained in force. If it was too broad in its operation the court should have been moved to modify it. No one had the right to dis-

332    APPELLATE COURTS OF ILLINOIS.

Mears Slayton Lumber Co. v. District Council, 156 Ill. App. 327.

obey it. Brittain, it is insisted, is immune from the operation of the injunction because he was not a party to the bill. This argument has been urged before and held to be without force where such party had actual knowledge of the injunction. On this point the court say, in O'Brien v. The People, 216 Ill. 354: "The fact that some of the plaintiffs in error were not parties to the injunction suit and were not served with process and had no notice of the application for the injunction, or were not served by the officer of the court with such injunction, is immaterial, so long as it is made to appear that they had actual notice of the contents of the injunction ordered and issued by the court." While Brittain was not a party to the bill, yet the proof in the record abundantly demonstrates that he had knowledge that the injunction had been ordered and the writ issued, as well as knowledge of its terms, and with such knowledge he deliberately and in conjunction with his co-appellants violated it in the manner and by the means set forth in the order adjudging appellants guilty of contempt. It was therefore in accord with precedent to proceed against Brittain and to discipline him for such violation.

We are satisfied that the evidence in the record sustains the finding of the court that all of the appellants wilfully disobeyed the injunction, and that they did the several acts set forth in the order adjudging them guilty of contempt.

The other questions remaining for our determination are embraced in the contention that the appellants had all been discharged from a former sentence of imprisonment for the same offense under writs of habeas corpus.

The record shows that on May 26, 1908, Judge Carpenter, then of the Circuit Court, sitting as a chancellor, on the motion of complainant entered a rule on appellants and others to show cause, on May 29, 1908, why they should not be attached for contempt of court for violating the injunction. On the return day of the rule, appellants failing to appear, after a hearing they were found guilty of the contempt set forth in the rule and a sentence of thirty days in the Cook county jail was imposed upon each of them. It was subse-

quently made to appear that a copy of the rule to show cause was not served upon appellants, or any other notice of contempt proceedings given to them. On June 1, 1908, all the appellants appeared in person and by counsel before Judge Carpenter, and entered a motion to vacate the order of May 29, 1908. These proceedings were continued until the next day, when writs of *habeas corpus* were granted and appellants were enlarged on bail, and the hearing on the writs and motions to vacate the order of commitment was continued until June 11, 1908, to be heard by Chancellor Mack of the Circuit Court. All these matters were heard as directed before Judge Mack, and he found that the order of commitment was without jurisdiction because appellants had not received any notice of the rule or of the hearing. The proceedings before Judge Mack were embodied in an appropriate certificate of evidence. From this it appears that the court found that the contentions of appellants that there was a failure to serve either of them with notice sufficient to bring them within the jurisdiction of the court to be dealt with for the contempt recited in the rule to show cause, was well taken, and he thereupon vacated and set aside both the rule of May 26, 1908, and the order of commitment of May 29, 1908. The record further shows that Judge Mack entered a new rule on the appellants to show cause before Judge Carpenter, on June 16, 1908, why they should not be committed for a contempt of court in violating the injunction in the original chancery case, in the same terms as that originally entered by Judge Carpenter. At this time all of appellants were in court before Judge Mack, who called them all to the bar of the court, when he entered the rule, and verbally informed each of them of its contents and of the time of the return of the rule, and that it was returnable before Judge Carpenter. By misprision of the clerk, and without any authority of the court, an order was entered June 11, 1908, in the *habeas corpus* proceedings, discharging the appellants. On June 18, 1908, that order was expunged from the record by Judge Mack, the court finding that the orders had been entered by mistake and misprision of the clerk and without any

authority or direction of the court. The court at the same time dismissed the several petitions for *habeas corpus.*

On June 19, 1908, the appellants appeared before Judge Carpenter in response to the rule entered by Judge Mack and objected to the jurisdiction of the court to proceed averring the insufficiency of the bill and discharge in *habeas corpus,* but the court held that these objections were of no valid force and proceeded to and did hear the proofs, and on July 8, 1908, adjudged appellants guilty of the contempt charged and punished them, and these are the same proceedings and hearing from which appellants prosecute this appeal.

The method of procedure against appellants for contempt was by affidavits. No petition was filed. None was necessary. The rule being supported by affidavits met the requirements adjudged sufficient in Franklin Union No. 4 v. The People, *supra,* and Flannery v. The People, 225 Ill. 62. As said in the Flannery case: "It is admitted that a contempt proceeding for the violation of a writ of injunction may be commenced either by petition or affidavits. It is sufficient if, either by petition or sworn statements, the matter complained of is brought to the attention of the court." The rule to show cause in terms directed that the hearing should be had on affidavits theretofore filed, and it was so heard. This also was effective and no violation of appellants' legal rights. The contention that appellants were in court under the writs of *habeas corpus* and therefore exempt from process of any other kind, is conclusively negatived by the fact, disclosed by the record, that they were in court in the original chancery cause moving to vacate the rule to show cause and the commitment entered against them, and that they prevailed, and that no order was at that time entered in either of the *habeas corpus* cases. Furthermore, that objection is raised on review for the first time. It comes too late. The objection, if available in the trial court, is waived if not there made.

The record conclusively shows that the orders discharging appellants in the *habeas corpus* proceedings were void as they were entered by the misprision of the clerk and without

any direction from the presiding judge. These orders were no orders at all. They were nullities. Nothing can validate them but an order of the court. The court had power and authority and it was its solemn duty, when it discovered the wrong that had been done, to at once scour the record of the evidence of such wrong. Being void, the orders entered by the misprision of the clerk could not be validated by any lapse of time or term or by the action or non-action of any of the parties. Helpless indeed would be the court if it could be controlled by the interference of ministerial officers. Imperiled would be the rights of litigants if an unauthorized action of strangers could be held to be of binding force. The rights of litigants rest on no such uncertain conditions. We think the rule announced in Peterson v. Metropolitan National Bank, 88 Ill. App. 190, is correct and controlling of the point now under discussion. The court say, in an opinion voiced by the then Mr. Justice Sears: "The only question remaining is as to whether the court should have granted the motion of appellants to expunge from the record all the void orders entered after the end of October, 1898, term, to quash the writs issued upon the order of January 12, 1896. This motion should have been granted. The rule that the court may not, after the lapse of the term, modify or set aside its final judgment, except motion to that end be entered at the judgment term, has no application to the vacating of void orders." Estate of Gould v. Watson, 80 *ib*. 242; Keeler v. The People, 160 Ill. 179; Parker v. Macoy, 91 Ill. App. 313.

Appellants prayed several appeals and each gave a separate appeal bond. The appeal is prosecuted here jointly, but as no one is objecting, the court will not pass upon this irregularity in procedure.

The right to strike either singly or in combination is not involved. If it were, the right would be conceded. The situation presented is of entirely a different character. Defendants in the bill conspired to ruin complainant in its business unless it acceded to a demand that it should employ none but members of defendant Unions. To enforce such de-

mand the conspiring defendants resorted not only to the declaration of strikes, but to picketing the works and other places where complainant was transacting business, intimidating the workmen and patrons of complainant and boycotting its products and those dealing in them. To restrain the further infliction of such acts, destructive of complainant's business and property rights, and to enable working men to engage with and work for complainant upon terms agreeable and satisfactory to each, the injunction was issued. For openly and flagrantly violating that injunction, with knowledge of its existence, appellants were punished. Such punishment was, under the circumstances of this case, a necessity. It is the weapon with which the chancellor is armed to maintain inviolate the integrity of his injunctional order. Such power has been held to have been properly exercised in like cases, and similar orders have been uniformly maintained by courts of review whenever they have been called upon to pass their judgment upon such questions.

We find no error justifying a reversal of the order of the Circuit Court appealed from, and it is therefore affirmed.

*Affirmed.*